# Illinois Official Reports

## Appellate Court

---

**Michno v. Cook County Sheriff's Office, 2021 IL App (1st) 200933**

---

| | |
|---|---|
| Appellate Court Caption | GENE MICHNO, Plaintiff-Appellant, v. THE COOK COUNTY SHERIFF'S OFFICE; COOK COUNTY SHERIFF THOMAS DART; THE COOK COUNTY SHERIFF'S MERIT BOARD; JAMES P. NALLY, Chairman; BYRON BRAZIER, Vice Chairman; BRIAN RIORDAN, Board Member; JENNIFER E. BAE, Board Member; JOHN DALICANDRO, Secretary; VINCE WINTERS, Board Member; KIM R. WIDUP, Board Member; PATRICK BRADY, Board Member; JOHN R. ROSALES, Board Member; and LANCE C. TYSON, Board Member, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>No. 1-20-0933 |
| Filed | June 4, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-10788; the Hon. Eve M. Reilly, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jacob D. Exline and Heidi Karr Sleper, of Kurtz, Sleper & Exline, LLC, of Wheaton, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein and Rebecca M. Gest, Assistant State's Attorneys, of counsel), for appellees. |

Panel      JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Mikva and Justice Oden Johnson concurred with the judgment and opinion.

**OPINION**

¶ 1  Plaintiff, Gene Michno, appeals the order of the circuit court affirming the Cook County Sheriff Merit Board's (Merit Board) decision to terminate plaintiff's employment. On appeal, plaintiff contends the court's determination was error where (1) the Merit Board's decision to terminate was against the manifest weight of the evidence, (2) the Merit Board failed to consider mitigating factors when it decided to terminate his employment, and (3) the court should have remanded the matter for the Merit Board to consider newly discovered evidence. For the following reasons, we affirm.

¶ 2           I. JURISDICTION

¶ 3  On August 4, 2020, the circuit court entered its order affirming the Merit Board's termination of plaintiff's employment. Plaintiff filed his notice of appeal on September 2, 2020. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing appeals from final judgments entered below.

¶ 4          II. BACKGROUND

¶ 5  On October 24, 2011, the Sheriff filed a complaint against plaintiff alleging that he violated the "Rules and Regulations of the Cook County Sheriff's Merit Board." The complaint requested a hearing on the charges. The following evidence was presented at the hearing.

¶ 6  Plaintiff testified that he began his employment with the Sheriff's office on December 27, 1999. As a result of accusations that he allowed a jailbreak in February 2006, he was diagnosed with major depression requiring medication and therapy. On April 19, 2006, plaintiff took a paid leave of absence under the Family Medical Leave Act of 1993 (FMLA) (29 C.F.R. pt. 825 (2005)) for approximately three months. After he exhausted his FMLA leave, plaintiff received one year of ordinary disability benefits. Those benefits ended in December 2007.

¶ 7  On December 21, 2007, plaintiff requested and received a one-year leave of absence with health insurance. On the form plaintiff used to request the leave, it stated that plaintiff is "aware that if this leave is granted, it will be governed by the following conditions: *** 'A written request for reinstatement must be submitted at least fourteen (14) days prior to the termination of the leave. Failure to do so shall be considered your resignation.' " Plaintiff signed the form as indication that he "understand[s] and agree[s] to the above conditions." His leave of absence ended on December 22, 2008. Plaintiff acknowledged that he did not contact anyone in the Sheriff's office in December 2008 or January through March 2009.

¶ 8  On January 12, 2009, Rosemarie Nolan, director of personnel for the Sheriff's office, sent plaintiff a letter, which stated:

> "Please be advised that your Medical Leave of Absence, which was approved on December 22, 2007 has expired. You are required to provide comprehensive medical

documentation to the Cook County Medical Unit no later than January 23, 2009 indicating your ability to return to work.

Additionally, if you are medically unable to return to work you must report to the Sheriff's Personnel Office to discuss your employment status no later than Friday January 23, 2009.

The Cook County Medical Unit is located at the County Building 118 N. Clark, Room 849, Chicago Illinois. *** If you fail to report your file will be forwarded to the Office of Professional Review for disciplinary action up to and including termination."

¶ 9    Plaintiff testified at the hearing that he never received the January 12, 2009, letter. On April 1, 2009, Nolan sent a second letter to plaintiff stating that he failed to report to the Cook County Medical Unit (Medical Unit) as directed in the January letter. The April letter contained the same information as the January letter but gave plaintiff until Wednesday, April 15, 2009, to report to the Medical Unit. Plaintiff called Nolan and informed her that he had a doctor's appointment.

¶ 10    On May 7, 2009, Nolan sent plaintiff a letter stating that her office "received information indicating you have an appointment to see your physician on June 8, 2009." The letter directed plaintiff "to provide comprehensive medical documentation to the Cook County Medical Unit no later than Tuesday June 9, 2009 indicating your ability to return to work" and for discussion of his employment status. The letter again stated "If you fail to report your file will be forwarded to the Office of Professional Review for disciplinary action up to and including termination."

¶ 11    Plaintiff testified that after he saw his physician, Dr. Martins Adeoye, he brought a note from the doctor to the Medical Unit on June 9, 2009. A receptionist or nurse told him that the note was insufficient because it was "too vague." He then went to the personnel office and told a female employee that Nolan wanted him to report there. He also told her that the Medical Unit wanted a more detailed letter from the doctor. The employee "went in back" and returned "a couple minutes" later stating, "[T]hat's okay, that's sufficient enough." Plaintiff returned to Dr. Adeoye on June 24, 2009. Dr. Adeoye wrote another letter, which plaintiff gave to a nurse at the Medical Unit on June 24, 2009. Plaintiff did not speak with Nolan and did not know that anything more was needed from him.

¶ 12    Nolan testified at the hearing that she was the Sheriff's personnel director from 2008-12. Plaintiff's approved leave of absence was set to expire on December 22, 2008; therefore, the deadline for him to submit a request to reinstate was two weeks before that date. Without such a request, plaintiff would be deemed to have resigned. Plaintiff made no such request, nor did he renew his leave of absence pursuant to General Rule 3.21. From December 23, 2008, the Sheriff's records classified plaintiff as absent without leave.

¶ 13    Nolan sent plaintiff a letter by certified mail on January 12, 2009, warning him that he would face discipline if he did not return to work. Plaintiff did not respond to the letter. Nolan sent a second letter on April 1, 2009, and plaintiff called her one week later. He told her that he did not receive the January letter and that his mother must have misplaced it. He also informed her of an upcoming doctor's appointment. Nolan sent plaintiff a third warning letter in May 2009 to provide comprehensive medical documentation by June 9, 2009. To her knowledge, plaintiff never provided these documents to the Sheriff's office.

¶ 14     On June 17, 2009, Nolan filed a complaint with the Cook County Sheriff Office of Professional Review (OPR). On September 21, 2009, plaintiff's counsel faxed Nolan a letter from Dr. Adeoye dated "6/24/2009." Nolan testified that she had not seen the letter before and that the letter alone would not have changed plaintiff's employment status to an approved absence status.

¶ 15     Patrick Fitzgerald, an investigator with the OPR, testified that he was assigned plaintiff's case. He stated that the OPR sustained the complaint against plaintiff because he failed to comply with (1) Cook County Department of Corrections General Order 3.21 (hereinafter General Order 3.21), which required plaintiff to seek reinstatement 30 days after his leave of absence expired; (2) the instructions requiring plaintiff to renew leave two weeks before expiration of his leave of absence; and (3) General Order 4.21 (II)(E), which forbids undocumented absences, which are considered serious violations that may result in termination. He further testified that under the collective bargaining agreement between the union and the Sheriff, correctional officers such as plaintiff cannot be approved for a leave of absence of more than one year and that leave must be renewed annually.

¶ 16     Cook County medical manager Renee Carrion testified that the Medical Unit did not have a record of plaintiff coming there in June 2009, nor did they receive a doctor's note from plaintiff in June 2009.

¶ 17     Correctional Officer Donetta Davis testified that she completed duty rosters on January 4, 2009, and April 2, 2010, and plaintiff was listed as on "leave of absence." Officer Davis did not work in the Sheriff's personnel department.

¶ 18     Juan Gonzalez testified that he drove plaintiff to the Cook County building in June 2009 but that he did not enter the building with plaintiff.

¶ 19     After the hearing, the Merit Board issued a written opinion finding that plaintiff did not request to renew his leave as required but that "the ongoing engagement of the [plaintiff] by the Cook County Sheriff's Personnel Department, on several occasions, serves as mitigation to the violations listed above." The Merit Board ordered that plaintiff be reinstated effective October 20, 2011. The Sheriff filed a complaint for administrative review, and on August 24, 2014, the circuit court vacated the decision of the Merit Board and remanded the matter "for findings and rulings in a manner consistent with this court's ruling as announced in court and recorded by court reporter on today's date." The court found that there was no evidentiary basis for the Merit Board's one factual finding and that the Merit Board's decision "improperly collapses" the liability and penalty determinations. The Merit Board also did not make a determination on all charges contained in the administrative complaint.

¶ 20     On remand, the Merit Board allowed briefing and oral argument on the evidence presented at the hearing. On June 11, 2015, it issued a determination to terminate plaintiff's employment effective October 20, 2011. In its order, the Merit Board stated that it considered the two specific charges in the original complaint: (1) plaintiff failed to return to work and failed to request an authorized status prior to the expiration of his leave and (2) since January 23, 2009, plaintiff has failed to report to work and failed to report to the Medical Unit "thereby abandoning his employment with the Cook County Sheriff Department."

¶ 21     After examining the evidence and testimony presented at the original hearing, the Merit Board concluded that plaintiff "failed to submit a written request for leave of absence at least 14 days prior to the termination of his previous leave and has since been unable to return to work." This conduct violated General Orders 3.8, 3.21, 4.1, and 4.21. Plaintiff also violated

the Merit Board's "Rules and Regulations," article X, paragraph B, section (3), which outlined the reinstatement procedures of General Order 3.21. The Merit Board agreed with the state's attorney that the ongoing communications between the Sheriff's personnel department and plaintiff was "the responsibility of the employer."

¶ 22    Plaintiff filed a complaint for administrative review in the circuit court. After oral argument, the circuit court determined that the Merit Board's decision was not against the manifest weight of the evidence. It found that "there is no question that there was a violation." It also found that, at the hearing, there was contradictory evidence about the mitigating factors. Noting that the court could not reweigh the evidence, it concluded that the Merit Board's decision to terminate plaintiff's employment was not against the weight of the evidence. Plaintiff filed this appeal.

¶ 23                              III. ANALYSIS

¶ 24    In a case of administrative review, we review the decision of the Merit Board rather than the circuit court's determination. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006). Review of an administrative agency's decision to discharge an employee involves two steps. *Malinowski v. Cook County Sheriff's Merit Board*, 395 Ill. App. 3d 317, 322 (2009). First, we determine whether the Merit Board's finding that plaintiff committed the charged offenses was against the manifest weight of the evidence. *Id.* Second, we consider whether the offenses constituted sufficient cause for discharge. *Id.*

¶ 25    There is no dispute that plaintiff violated General Order 3.21, which required plaintiff to seek reinstatement 30 days after his leave of absence expired. He also failed to renew his leave two weeks before expiration of his leave of absence. Plaintiff's leave of absence was scheduled to expire December 22, 2008, and he admitted that he did not contact the Sheriff's personnel department in December 2008 or January through March 2009. It is also undisputed that plaintiff did not report for work after his leave ended. The Merit Board's finding that he violated General Orders 3.8, 3.21, 4.1, 4.21, and the Merit Board's Rules and Regulations, article X, paragraph B, section (3), was not against the manifest weight of the evidence.

¶ 26    Next, we determine whether the Merit Board's findings support its conclusion that cause existed to discharge plaintiff. "Cause" is defined as " 'some substantial shortcoming' " that renders the plaintiff's continued employment " 'detrimental to the discipline and efficiency of the service.' " *Walsh v. Board of Fire & Police Commissioners*, 96 Ill. 2d 101, 105 (1983) (quoting *Fantozzi v. Board of Fire & Police Commissioners*, 27 Ill. 2d 357, 360 (1963)). "An administrative agency's findings and conclusions on questions of fact are considered *prima facie* true and correct." *Lopez v. Dart*, 2018 IL App (1st) 170733, ¶ 70. Therefore, a reviewing court will not reweigh the evidence and will reverse only if the agency's determinations were arbitrary, unreasonable, or unrelated to the requirements of service. *Malinowski*, 395 Ill. App. 3d at 322-23.

¶ 27    Plaintiff testified that he was diagnosed with depression and that his medications and therapy rendered him unable to work. While he may have had medical reasons for not working, that fact alone did not preclude a finding of cause for discharge. Our courts have consistently found that a pattern of unexcused absenteeism, even if caused by a medical condition, is a basis for termination. See *Lopez*, 2018 IL App (1st) 170733, ¶ 81 (concluding that "the Merit Board's decision to reject the plaintiff's defense of alcoholism as an excuse for violating the agency's rules" was not error); *Marzano v. Cook County Sheriff's Merit Board*, 396 Ill. App.

- 5 -

3d 442, 447 (2009) (finding that, even though the plaintiff had a medical condition that contributed to her unexcused absences, her continued inability to work significantly impacted the operation of the Sheriff's office); *Cruz v. Cook County Sheriff's Merit Board*, 394 Ill. App. 3d 337, 342 (2009) (finding cause where the plaintiff called in sick when she was actually sick, but she had no accrued sick days to use). An excessive pattern of unexcused absences "threatens the penal institution's ability to staff itself and seriously jeopardizes its security." *Gunia v. Cook County Sheriff's Merit Board*, 211 Ill. App. 3d 761, 773 (1991).

¶ 28     Plaintiff, however, contends that his ongoing engagement with the personnel department was a mitigating factor the Merit Board should have considered in imposing a penalty. He argues that he attempted to comply with Nolan's directive and he was not adequately warned of the consequences of his conduct.

¶ 29     The Merit Board found that the ongoing communications between the Sheriff's personnel department and plaintiff reflected "the responsibility of the employer." The evidence presented supported the finding that any engagement with the personnel department was instigated by the personnel department, not plaintiff. Although his leave of absence expired in December 2008, plaintiff did not contact the personnel department until one week after receiving Nolan's April 1, 2009, letter. Furthermore, the letters Nolan sent to plaintiff on January 12, April 1, and May 7, 2009, explicitly warned him that his failure to report to the Medical Unit as instructed would result in "disciplinary action up to and including termination."

¶ 30     Also, the testimony regarding plaintiff's attempts to comply with the letter's instructions was conflicting. Plaintiff testified that he saw his physician and brought a note to the Medical Unit on June 9, 2009. After being told by a receptionist or nurse that the note was insufficient because it was "too vague," he went to the personnel office and told a female employee that Nolan wanted him to report there. He also told her that the Medical Unit wanted a more detailed letter from the doctor. The employee "went in back" and returned "a couple minutes" later stating, "[T]hat's okay, that's sufficient enough." Plaintiff testified that he obtained a second note from Dr. Adeoye, which he gave to a nurse at the Medical Unit on June 24, 2009. Plaintiff never spoke with Nolan.

¶ 31     Nolan testified that she sent plaintiff a letter by certified mail on January 12, 2009, warning him that he would face discipline if he did not return to work. Plaintiff did not respond to the letter, so she sent a second letter on April 1, 2009, and plaintiff called her one week later. He told her that he did not receive the January letter. He also informed her of an upcoming doctor's appointment. Nolan sent plaintiff a third warning letter in May 2009 to provide comprehensive medical documentation by June 9, 2009. To her knowledge, plaintiff never provided these documents to the Sheriff's office. On September 21, 2009, plaintiff's counsel faxed Nolan a letter from Dr. Adeoye dated "6/24/2009." Nolan testified that she had not seen the letter before and that the letter alone would not have changed plaintiff's employment status to an approved absence status.

¶ 32     Although Juan Gonzalez testified that he drove plaintiff to the Cook County building in June 2009, Cook County medical manager Renee Carrion testified that the Medical Unit did not have a record of plaintiff coming there in June 2009, nor did they receive a doctor's note from plaintiff in June 2009.

¶ 33     Conflicts in testimony and the credibility of witnesses are best resolved by the Merit Board, the agency that heard the evidence and observed the witnesses. *Lopez*, 2018 IL App (1st) 170733, ¶ 82. On administrative review, it is not this court's function to reweigh the evidence

or make an independent determination based on the facts. *Cook County Republican Party v. Illinois State Board of Elections*, 232 Ill. 2d 231, 244 (2009). Instead, we must affirm if the record contains evidence supporting the Board's decision. *Malinowski*, 395 Ill. App. 3d at 323.

¶ 34 Even if plaintiff's engagement was a mitigating circumstance, such evidence did not render a decision to discharge *per se* unreasonable. *Id.* Absenteeism and tardiness affect the Sheriff's department's ability to operate efficiently, and discharge based upon unexcused absences is "very much related to the requirements of the service." *Marzano*, 396 Ill. App. 3d at 447. Accordingly, we find that the evidence presented at the hearing supported the Merit Board's determination and its decision to terminate plaintiff's employment was not unreasonable, arbitrary, or unrelated to the requirements of service.

¶ 35 Plaintiff next argues that the court should have remanded the matter for the Merit Board to consider newly discovered evidence. Section 3-111(a)(7) of the Code of Civil Procedure provides that the circuit court has power:

> "where a hearing has been held by the agency, to remand for the purpose of taking additional evidence when from the state of the record of the administrative agency or otherwise it shall appear that such action is just. However, no remandment shall be made on the ground of newly discovered evidence unless it appears to the satisfaction of the court that such evidence has in fact been discovered subsequent to the termination of the proceedings before the administrative agency and that it could not by the exercise of reasonable diligence have been obtained at such proceedings; and that such evidence is material to the issues and is not cumulative." 735 ILCS 5/3-111(a)(7) (West 2018).

¶ 36 Plaintiff points out that, after being a main witness at his hearing before the Merit Board, Nolan became the executive director of the Merit Board in 2014. She was the executive director when the Merit Board decided to terminate plaintiff's employment on June 11, 2015. Plaintiff argues that, after she became executive director, Nolan met with commissioners to discuss facts and outcomes of specific cases pending before the Merit Board, including his termination case. He contends that Nolan used her new position to interfere in his case.

¶ 37 His allegation is based on her testimony in a separate federal lawsuit, Michno v. Cook County Sheriff's Office, No. 1:13-cv-07163 (N.D. Ill. Oct. 17, 2018), which was a civil rights case that was settled for undisclosed reasons in 2018. In that case, Nolan was asked whether "there were any discussions about [plaintiff's] merit board case in executive session?" She answered, "Yes." Defendants respond that Nolan was not a member of the Merit Board and she had no authority to render decisions. Her role as executive director involved administrative functions such as coordinating and scheduling disciplinary hearing cases. They contend that, in any event, plaintiff waived the issue by not raising it at the Merit Board hearing.

¶ 38 Nolan's employment with the Merit Board is not newly discovered evidence, since she was in that position when the hearing in plaintiff's case was held in 2015. If Nolan's employment concerned plaintiff, he should have raised the issue at the hearing. Furthermore, the mere fact that Nolan discussed plaintiff's case in an executive session does not show she interfered with the Merit Board's decision. As executive director, Nolan was in charge of coordinating and scheduling disciplinary hearings, so it would not be unusual for her to discuss plaintiff's case. Nothing in her testimony indicated that she tried to influence the outcome of plaintiff's case. To say that she used the discussions to interfere with his case, without substantiating facts, would be mere speculation. This evidence does not merit remand under Section 3-111(a)(7).

¶ 39    Plaintiff also alleges that, after his hearing concluded, he discovered the OPR offense table, which indicated that the penalty for "Failure to Report" warranted, at most, "a 3-10 days suspension." If that new information had been available to him at the hearing, it would have shown that termination was an extreme penalty for his offense.

¶ 40    Even if we presume this evidence could not be obtained through reasonable diligence, the mere fact that the offense table shows a suspension of 3-10 days for failure to report is not material to plaintiff's case. Material evidence is relevant and addresses substantial matters in dispute. *Caliendo v. Martin*, 250 Ill. App. 3d 409, 419-20 (1993). The offense table lists "Failure to Report," and the description indicates it refers to isolated incidents. For example, the aggravated form of "Failure to Report—Criminal/Serious" takes into consideration the "seriousness of incident." Plaintiff's failure to report to work involved more than a few incidents. He admitted that he has not returned to work since his leave expired in December 2008.

¶ 41    Additionally, plaintiff's failure to report was not the only reason given for his discharge. He also did not follow the instructions on the leave of absence form or the instructions in the letters from Nolan. Nolan's last letter to plaintiff explicitly stated that failure to report to the Medical Unit with medical documentation and to discuss his employment status with the personnel department by June 9, 2009, would result in "disciplinary action up to and including termination." Although plaintiff disputes this evidence, Renee Carrion testified that the Medical Unit did not have a record of plaintiff coming there in June 2009, nor did they receive a doctor's note from plaintiff in June 2009. For these reasons, plaintiff has not established how the offense table is material to the case.

¶ 42    The case plaintiff cites as support for remand, *Morelli v. Ward*, 315 Ill. App. 3d 492 (2000), is distinguishable. In *Morelli*, a deputy sheriff was indicted on a charge of domestic battery against his girlfriend, and after an administrative hearing, he was terminated from his employment. *Id.* at 494. At his subsequent criminal trial, his girlfriend recanted her grand jury testimony and her complaint against him, and he was found not guilty of the criminal charge. *Id.* at 496. In his pending administrative appeal, the trial court denied Morelli's request for remand to the administrative agency to supplement the record with evidence of his acquittal. *Id.* at 496-97.

¶ 43    The appellate court reversed, finding that although he had contact with his girlfriend during the administrative proceedings, nothing in the record suggested that he knew or could have known she was willing to recant her prior testimony. *Id.* at 499. It held that "[u]nder such circumstances it would be unjust to penalize Morelli for not seeking out the complaining witness to appear." *Id. Morelli* is easily distinguishable in that the girlfriend's recantation nullified the underlying incident that had resulted in the termination of his employment. Evidence that is probative of a defendant's innocence is highly relevant and material. *People v. Coleman*, 2013 IL 113307, ¶ 96. Therefore, remand for consideration of this material evidence was "just" action under the statute. *Morelli*, 315 Ill. App. 3d at 499. For the reasons discussed, plaintiff's evidence did not rise to this level of materiality.

¶ 44    Defendants in their brief contend that plaintiff improperly added Cook County as a party in his docketing statement. They argue that Cook County is not a proper party because it was not a party of record in the Merit Board proceedings or in the proceedings in the circuit court. See 735 ILCS 5/3-107(a) (West 2018) ("in any action to review any final decision of an administrative agency, the administrative agency and all persons *** who were parties of

record to the proceedings before the administrative agency shall be made defendants"). Plaintiff does not dispute this contention on appeal. Since the parties do not disagree and nothing in the record indicates Cook County was a party in the underlying proceedings, we find that Cook County is not a party defendant here.

¶ 45                                    IV. CONCLUSION
¶ 46          For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 47          Affirmed.